May it please the court. Good morning, your honors. My name is Susan Lin. I represent Mr. Epps, and I'd like to reserve three minutes for rebuttal. Weren't you here on Tuesday? I was in the audience on Tuesday. I thought I saw you. Your honor, this case involves... Were you here for the bankruptcy cases on Tuesday? I was here for one of them. Oh, boy. And then she left. Sorry. Not really my area. Okay. Thank you. Your honors, in this case, the search warrant affidavit contains materially false statements regarding the dates of the criminal activity. These statements in the affidavit contradicted reports that were within the affiant's possession and were made with reckless disregard for the truth. When those incorrect dates are excised from the affidavit, the affidavit fails to set forth probable cause, both because of the staleness of the information contained therein and because of the lack of any connection between the criminal activity and the location searched. The problem that you have is the district court made a determination that Agent Roman testified credibly and that he didn't act recklessly. Maybe he could have done a better job and maybe he was a little negligent, but it certainly wasn't intentional and it wasn't reckless. So, your honor, first of all, I actually don't think that the credibility of the affiant in this case is relevant to a determination of whether or not he was reckless. As this court has said... Well, usually reckless is that you act so brazenly that you really don't care what the result might be of your actions. Right. So what this court has said is for recklessness in these cases is an agent acts recklessly if there exist obvious reasons for him to doubt the truthfulness of the information that he has asserted. And I don't think that the district court in this case fully considered the several reasons that existed in this case for the agent to doubt the truthfulness of his assertion. There were at least four such obvious reasons. One, there were the underlying cyber tip line reports which contradicted the affidavit. Those were in the agent's possession. Two, there was the ICAC report which the agent supposedly relied upon in writing the affidavit and even that report contradicted the information in the affidavit. What happened was the agent spoke with the agent at Homeland Security and got some information that turned out to be incorrect. Is that correct? What happened was there was an email that was sent back in November of 2010, I believe it was, from an agent, Emily Arnold, to, it got to Agent Roman. And that was an introductory email. It attached to it or contained with it all the underlying reports which then Agent Roman failed to review even in light of a specific question from one of the prosecutors about the cyber tip line reports. I believe AUSA Levy testified that he asked, and there's an email that's attached in the appendix, but he specifically asked Agent Roman about information contained in the cyber tip line reports. Agent Roman responded via email. The answer made it seem like he looked at the cyber tip line reports, but he didn't. And AUSA Levy testified that he would have expected Agent Roman to have looked at those underlying reports in responding to his question. He used the dates those reports were received as the dates of the uploads, but that, was that reckless? Your Honor, in a case where... It's not like he made this up out of whole cloth. Right, but in order to establish probable cause, everybody knows that the relevant date isn't the date of the report of the criminal activity, it's the date of the criminal activity itself. So you've got a few months difference then. It's not a few months difference in this case. In this case, the difference is more, it's closer to a year. And if the court actually follows, if the court actually follows the rule that misstatements have to be excised, then we're left actually with an affidavit in which it does not establish the date of uploads at all. Excised and just put in analogous correct dates. I mean, the point here is, the problem that you have is that many have said, including in this case, that child pornography is something that doesn't go stale. And it usually stays very close by the person who is looking at that or is gathering that. And so, you know, this isn't something where memories get stale or witnesses no longer can recall. This is something qualitatively different. So, Your Honor, there are two parts of that that I would like to respond to. I'm going to start with the staleness issue. Okay. Yes, child porn evidence does not easily grow stale. All courts have stated that. However, this court has also stated that there comes a point in time when even child porn evidence does grow stale. And in this circuit's decisions, I believe in King, the circuit flat out stated that in cases where the evidence is over a year old, that the court has looked for more recent evidence of ongoing criminal activity or ongoing interest in child pornography. The boilerplate language that talks about how long child porn evidence lasts, it gets you to a point. But at some point, even with that language, the information is still stale. And in this case, Your Honor, I suggest that given the gap in time, that without any refreshing information, plus the change in physical location, that under this totality of circumstances, in this case, the affidavit did not establish probable cause. What makes the affidavit, based on the incorrect dates, what makes the evidence information stale here? Well, if Your Honor is basing it on the four corners of the affidavit, as is, without excising, without adding. No, he's wrong. He's off by 10 months. That's it, 10 months. Okay. So I think this actually goes to whether or not one excises and adds in, or one simply excises the information, right? And I think that both the government and the defense agree that when you're dealing with a misstatement, an affirmative misstatement, you cut out the information. When you're dealing with an omission, you add the information. But you don't do both when all you have is a misstatement. And I think that this Court's case in Youssef provides the perfect example of this. In Youssef, the search warrant was looking for evidence of tax evasion, and the affidavit in that case contained the incorrect information about the underreporting of receipts of income. And the Third Circuit specifically said in Youssef that when it is a misstatement like the incorrect number, the incorrect amount of underreporting of income, we simply cut out this information, and we specifically, the Circuit said, do not add the correct information. In that case, the incorrect number was $54 million, the correct number was like $7 million, and the Third Circuit said no, we don't put that back in. And that's the same situation that we have here. We have the incorrect dates. There exists out there the correct date, but under this Court's decision in Youssef, we don't put those correct dates back in. If the correct date was put in, do you think this affidavit would have not passed muster with regard to getting a warrant? If the correct dates were put in, I think the affidavit does not establish probable cause. The district court disagreed with you, though. The district court disagreed with me. I think that the district court actually didn't consider the combined effect of both the scaleness of the information plus the change in address, the defendant's move to a new house, his marriage, and essentially his change of life, and on top of that, the lack of any evidence that there was a computer present or any kind of computer evidence present in his current home. Was there evidence about having a computer in his other home? So in the other home, it was his parents' home, there was evidence of an Internet account being registered there, a Comcast account. That account was actually in his mother's name, which I would argue leads to the inference that any computer in that home belonged to her. Regardless, there's no evidence that the computer in that home, if there was more than one, if the computer belonged to Mr. Epps, if Mr. Epps took that computer with him from the Marshall Avenue home to the 2131 Sear Street home, we don't have any of that. Are you suggesting there was an evidence that linked him to those, what do you call it, n-dot-something-dot-com? You're suggesting it could have been his mother? No, Your Honor. I actually, for the purposes of this case, do not need to dispute that the evidence, that the affidavit contains information linking Mr. Epps to the e-mails and to the n-dot-com account. I don't need to dispute that here. Well, I thought you just were. That's all I'm saying. No. You're talking about his mother and you're talking about that. I'm sorry. What I was trying to point out is that the computer itself, that there's no evidence that the computer itself that was used to do these things belonged to Mr. Epps or that he took that computer to 2131 Sear Street. And it's the computer that would contain the evidence. There was stuff that linked him. He had a Twitter account. He had a profile, a picture of himself posted. They were on to the right person. So all those accounts are not linked to a physical location. They're all Internet-based accounts that can be accessed from any computer located anywhere. What they didn't even have. A lot of them had MRH288, which was linked to him. Right. And also, though, once again not linked to a physical location. Any IP address is what's needed to link all this Internet activity to an actual physical location. And all the IP addresses that they got in this affidavit did not link to 2131 Sear Street. It all linked to different locations. Either it was old and it linked to the original home, or it linked to a mobile device. It's not like he was in the original home in 1842. He was in the new home no later than November 10th. 20... Whatever the year was. Yeah, 2010. He got married and he moved. A couple of months later, a few months later. We don't know the date of moving. It's not in the record. We don't know the date. But we do know that he was there by November 10th. Right. And we also know that all the criminal activity in the case occurred well before that. Yeah. I don't have any problem with that. He was more than... He was a collector, a sharer. He didn't just sit in his room and watch a video, right? Well, so there is evidence... He created accounts on social networking websites and he shared with other people. But I'm not sure, Your Honor, that that changes the analysis as far as staleness is concerned. There still grows a point in time when even with all the collector language that's contained in the affidavit, which is boilerplate language... Well, so he's a collector. How long can he... How long before information goes stale? Well, as this court has stated once again in King, when there is over a gap of a year... Well, wait a minute. King was a what kind of case? King was a child porn case. And in King, it was somebody who was receiving child pornography. The information was four years old and the court relied on... They were receiving it in the mail, right? Excuse me. Let me check. And that information was over four years old. We're dealing here at most with, what, 26 months, 20 to 26 months? Well, if the court excises the information altogether, it's about 26 months. So King was mail or Internet? King, the most recent ordering was a computer porn, I'm sorry, a child pornography video. But the King court did say that they were relying on two factors. One was the boilerplate language, and two was the evidence of recent activity. Now, if the court wants to look to other cases that I believe involved computer evidence, there's the court's case in Eberle and the court's case in Prodswick, where they... I think we need child porn evidence. Right. Well, where they were... Collecting child porn. So those were... But these were all cases which involved somebody who they said was either collecting or manufacturing. Okay. So I would say that in our case, where we have a gap of about 26 months, even if he's a collector, that you still need more recent refreshing information, especially in light of the totality of the circumstances here, where there's both the gap in time and the change of location. Those cases you just mentioned, are you saying that there are child porn cases where computer information was more than a year old and was thrown out? Is that what you were trying to say? No. What I'm saying... I didn't think so. No. So straighten me out. What were you trying to say? What I'm trying to say is that when this court has examined child porn evidence, both computer and not computer, and that evidence is over a year old, sometimes three years, sometimes four years, that the court has looked for refreshing information. Okay. Well, this is not... If that's supposed to be a bright line, we're not there. Right. And I'm not saying that the court should draw a bright line here. What I'm saying is that the court looks at it to tally the circumstances. And the 26 months in this case, plus the change in physical location, means that there's got to be case-specific information. If he's a collector, it's not at all beyond the pale that he would take his materials with him. When he moved, he'd only been there a short time. Except that we have nothing specific to him to say that he's the kind of collector that would take it with him. Yes, there's a boilerplate language. And, yes, that is a factor for the court to consider. But this is a man who left his parents' home and got married and started a new life. And there's nothing indicating that he continued an interest in child pornography beyond the dates that are listed in the affidavit, the corrected affidavit. And in this case, Your Honor, I would submit that you need case-specific information that adds to that boilerplate. We'll get you back to the public. Thank you. Thank you. Mr. Shapiro. Good afternoon, Your Honors. My name is Paul Shapiro. I'm an assistant United States attorney. I represent the United States in this case. Just a fact question or inquiry. You've got the National Center for Missing and Exploited Children, which sends a report to the Pennsylvania Internet Crimes Against Children Task Force. And then Homeland Security, they sent that on to what, Homeland Security? Correct. How does Homeland Security get involved? I'm obviously thinking like a layperson. Homeland Security deals with customs. It's a traditional area of investigation of what used to be customs. And is now absorbed into Homeland Security because it deals with interstate and international commerce. And it is one of, they are one of the primary agencies that we deal with in terms of child pornography investigations. Just speaking for myself, I wasn't as concerned with the age as I was concerned with the fact that there was no allegation of he had a computer in his new house. Okay. That concerned me more. And, Your Honor, that really is the point that defense counsel is making. And in a sense, defense counsel is dealing with a different kind of case. And what defense counsel is dealing with is a case where the probable cause is established based on the And so it is a location-based probable cause, that something is going to be in that place because of something unique about that place. Here, the theory of probable cause is really different. It's, you could think of it as a whither-thou-goest theory of probable cause. And it is a theory of probable cause focused on the person. And in this case, what they say is we have an individual who has a long-term interest in sexualizing children. And this interest is expressed through upload after upload after upload when he is located in one place. It is also expressed historically in actual hands-on conduct that he conducted at an earlier age. In two, or three, I guess, it's also expressed in things that in others might seem innocent, but in his case seemed far more sinister, which is the tweets about the eight-year-old young friend who knows all about American history. The district court didn't go into that stuff. The district court didn't go into that stuff. The district court didn't have to. But I guess the question is, the district court found probable cause, and probable cause is based on the face of the affidavit. And the affidavit, the theory of probable cause in the affidavit, is based on this is an individual who is a collector. This is an individual who has this kind of lifelong, long-standing interest. And on the odds, when you have someone who has a history of collecting child pornography, that person is going to take it with them when they move from place to place. Has our circuit ever found that information that's more than 24 months old, two years old, is not stale without some sort of refreshing activity? I don't know. I don't know that this case has. That's a point that Ms. Lindt made, and it's a fair point. I don't know of any case. Other circuits certainly have. But in this case, I would say there is the kind that if refreshing information is necessary, it exists here in the form of the tweets about the young friend and in the form of the erecting the basketball. But shouldn't that have been noted in the affidavit? Well, I guess the affidavit was wrong to begin with, so. Well, it was noted in the affidavit. It was noted in the affidavit. Yeah, it was, yeah. That information was clearly in the affidavit. And that was 24-month-old information, perhaps. Well, no. The information about the uploads was potentially between 20 and 24 months. But what the agent said is, I went to the new residence. I observed his car parked out front. I observed him putting a basketball net in front of the house. We went on the Internet and tracked down his tweets, and he's talking about this 8-year-old boy. He's presumably the same 8-year-old boy. He's driving to school. He said we went on the Internet, and right now he's talking on a computer to somebody? Well, when you say right now, I don't – You mean contemporaneously. But it was – Recent. Certainly far more recent, yes. After the move? I was looking for some evidence that he was on a computer after the move. It was after the move because it talks about the Google search showing, turning up Van Eps in Philadelphia, which is where he moved to. And it talks about that Twitter profile having the Y-O-U-I-I-C. Okay, so after the move, he's on a computer that – where he's referencing this 8-year-old child. So the idea that he left a computer behind and has no computer in a new residence has been somewhat dispelled. Well, Judge – Although I know you're not going on this location theory, but it seems to me that if you have evidence that's, like, two years old, that he had a computer and he had stuff on that computer, and then you have nothing, you have a much harder case than if you have something new where he's on a computer. Yeah, the answer to that is yes. And my equivocation, Judge, was with the word computer. Yeah, that's what I was going to ask. Because there is clearly evidence of some device with which he can communicate through the Internet, whether it's a cellular telephone, a smart cellular telephone, or some other electronic device that might be in the form of a computer, and really can have your cake and eat it too and say all of those things for our purposes are computers, which they really are. I mean – I guess that's what I was thinking, but maybe I'm wrong. So – You can't collect – can you collect on those things? You can collect on – they do searches for – So what would the difference be? They do searches on Xboxes because those things have memories. All sorts of devices. People who run around with iPhones, which I am not one, seem to have a lot of pictures in them. They have pictures in them. They have – there's a world of things in all sorts of devices that we have separate names for, but effectively they're all computers. Some are desktops and some are laptops and some are microwave ovens. When would you draw the line on staleness? When does something become, even in the context of child pornography, stale? The short answer and the very unhelpful answer is its totality of the circumstances. But the reason that that is the answer is that facts vary from case to case. Are you dealing with someone – are you dealing with a single – several downloads in a two-minute span, or are you dealing with someone who has done 20 uploads over a series of months with multiple images establishing the existence of a collection? Are you dealing with somebody for whom this is a one-time event or this is a lifetime preoccupation? And that goes a long way to answering that question because using the reasonable – you've got something and you think you link it to X, but it's one time. Do you wait to try to get additional information before you go try to get a warrant, or how do you proceed? Well, Judge, that would certainly be reasonable and that would be the first inclination would be to go and get additional information. That would – and that would get stale far more quickly than the long-time collector. That's kind of why you lost Zimmerman. That's exactly right, Your Honor. That among other things, yeah. So what we're dealing with here is not the old typical case, which is where they would find a location where an upload had come from or a download had gone to and say, this is a bad – this location has something unique about it that warrants a search. What we're saying is, like we do often in drug cases, like we did in the chemical weapons case, like we do in bank robbery cases, we say, here is a person who has something about him. In this case, it's a collection of child pornography. It might be chemicals. It might be bank robbery proceeds or drugs. That has to be stored somewhere. Particularly in the case of a child pornography collector, it is overwhelmingly likely that is going to be in the person's residence, at least in the absence of some reason to believe it's somewhere else. What's your response to Ms. Lynn's point that if information is incorrect in an affidavit, you need to consider the affidavit without the information, without trying to put in analogous information that is correct? The answer is that that categorical answer is wrong. I would point the court to the unpublished decision that Your Honor wrote in Rivera. That's probably why it's unpublished. Where there was a mistake in the name of the Rivera brother that had been – there was a David and there was a Daniel. And the agent – the officer didn't keep them straight, and the court pointed out the district court didn't keep them straight either. And they got mixed up in the affidavit. And you pointed out in your opinion that if we were going to evaluate it under Franks, we would substitute the correct name for the incorrect name. And there are certainly cases where you would strike it and not substitute. I'm not saying that it would always be the case. But where you have a case where the information would of necessity have been there – So, for example, you wouldn't have had Rivera. They wouldn't have said Rivera. They would have had a first name. So if it had not been the wrong first name by accident, it would have been the correct first name. Same thing here. The agent thought he put in the correct time frame. And he thought that the time frame box was checked. And no agent would submit such an affidavit without a time frame. No assistant U.S. attorney would approve it without a time frame. And certainly no judge would sign it without a time frame. So if you simply struck it, at least in this case, it would be very unrealistic because you're not determining how serious the mistake was because you need to now do what Your Honor did in Rivera and substitute the correct information. Here it's a little bit academic because we can infer from the evidence, even if you accept the strike only theory. Here you can infer a time frame in any event that is not that very far different from the correct time frame. Is it your position that – it is not your position, I would think, that were we to affirm here that the 26 months would become a rule, let's say, for all types of computer crimes, you know, trade secret or use of someone's password, that there is a – should we distinguish this – if there were affirmance here – affirmance in this child pornography case finding the information from other types of staleness – claims of staleness made in other types of case? The short answer is yes, it is an appropriate distinction because one of the circumstances in the totality is what kind of evidence that you're dealing with. The best analogy I can give, Your Honor, is even outside the computer area. When we're doing a search for business records, we assume that business records of an ongoing business are going to be there for many, many years. Other kinds of records, like betting slips, for example, we can't assume that, even though they're, I guess, a kind of a business record. Their half-life is going to be very short. So here we have really two things that coalesce. We do have the fact that computers have very, very long memories and that, forensically, we have the ability to recover information from them long, long after the fact, combined with the fact that we have a type of evidence which we know from the evidence in the affidavit as well as the cases from the circuits, a kind of evidence that the people who own it tend to keep for a long time. And those things, in this case, synchronize and work together so that 26 months in this case doesn't mean 26 months in a trade secret case or a betting case. Can I ask a question? Your theory is that this is all about who he is and what his life has been, and then we can assume that in his new place he's doing the same stuff. But the affidavit, amongst all the boilerplate, is all this stuff about the IP address, and the IP address goes with a specific computer. And then we have nothing to indicate that that computer goes. I mean, why are we doing all that if that's not the theory that you're going under? Okay. There are two places where the affidavit talks about IP addresses. One is exculpatory evidence that the agent is disclosing in the interest of full disclosure, which is we asked Yahoo – we've got these emails that are tied to him. We asked Yahoo to tell us from where has somebody been communicating with those emails in the recent past. And that gives you an IP address. Those IP addresses turn out to be from all over the world. And the agent says, number one, I went down this investigatory track to see if I could learn anything, and all I learned is that the person, presumably Van Epps given all the other evidence, is sophisticated in the use of computers and is capable of spoofing where it is he's communicating from. So you get Venezuela and Brazil and all these other places. So that's one place where the IP is there, and it is there for a reason other than tying a location. It's explaining an investigatory method and disclosing information. The other place is essentially at the very beginning of the investigation, which is you have this account, this NING account that is set up, and it is set up not at a particular location but by a service provider, and you can communicate with it from anywhere. So if you had a smartphone, you could communicate with it from this courtroom. But I'm reading from what Pegna says, in other words, a static IP address is an IP address that does not change over time and is specifically assigned to a specific computer. Correct. So I assume that's in there because that has some relevance. That is in there because the agent is explaining to the reader that there are two varieties of IP addresses. One always identifies a particular computer or, more accurately really, a particular device communicating with the Internet, and the other is one that is assigned at a particular date and a particular time to the device communicating with the Internet. So that's the historical or the technological lesson that goes with the information that is then provided, which is… In other words, there's a whole lot of stuff in this affidavit that's irrelevant to this case. No, it is not at all irrelevant to the case because… Why is it relevant? Okay, because the other place where IP address comes up is Ning reports to NCMEC that there was an upload by Arnes on a particular date. They are unable to tell you where that upload originated from geographically, but they are able to establish where the computer was that opened up that account. So the computer that opened the account that became a vehicle on which child pornography was posted was opened from the home where Epps then lived with his parents and sibling. So the information about IP address is there for a particular reason, which is to explain how they know to connect the Collingdale address with the scheme in general, although they can't establish that an upload came from that home, they can establish that that home was used in connection with the scheme, specifically to set up the account that was the vehicle for posting child pornography. I don't know if I was any clearer in my explanation than the affidavit was. Yeah, and good enough. Thank you very much. We'll hear from Ms. Lynn on rebuttal. Thank you. Responding to some of the questions that the court asked Mr. Shapiro and some of his responses, first of all, as to the excising versus adding of the information, I would just refer the court to Yusuf, specifically footnote 12. I think that that covers it. Also, I know that Judge Rustani asked specifically about that young friend tweet and when that might have occurred in the appendix on page 84 through 85, specifically paragraph 17 of the affidavit. Those tweets occurred in April of 2010, which was before his marriage. It was before his move to the new address, and it was at least 13 months before the issuance of the search warrant. So in my mind, that hardly constitutes refreshing information. I believe that what the government might be trying to do here is to take away the requirement, the location requirement in probable cause. The court has held that just because there's probable cause that somebody committed a crime doesn't mean there's automatically probable cause to search that person's home. There has to be something more, and in this court's drug cases, the cases where a drug delivery or a drug sale happened in some other location and the court found probable cause to search that person's home, there was case-specific fact that made it more likely that evidence would be found in that person's home, such as evidence that that person was selling drugs on such a scale that the quantity of drugs involved, the ledgers that must be involved, the quantity of cash that must be involved, the guns that must be involved, have to be stored someplace. So here you have a person who is suspected of having child porn in Collingdale. He moves to Sears Street in Philadelphia. There is some additional information they have that makes them think that the activity is still going on. Your Honor, if I may, I actually disagree with that last point. Or refreshes the information that they had. And you're now, you know, the dates are off, but we're down to maybe, what, 10 months difference. And what's the problem there? Sir, I think I'm a little confused because I actually don't agree that there's refreshing information post the move. I think there's no refreshing information because the tweet was before the marriage and the move. Right. And the tweet in another time. He got married in June. I'm trying to remember the record. He got married in June and he was in the new house no later than November, right? Right. He was married in July and he was in the new house. It's not like it was years later. Well, except that all that is significantly later than any criminal activity in this case. It's all a series of steps that added together or a series of facts that added together lead to the lack of probable cause. It's a 26-month gap in time plus the marriage, plus the move, plus the lack of refreshing information from the 2131 Sears Street house. Indeed, I would say that there's no refreshing information post the criminal activity itself. I don't think that a tweet about a young friend equals refreshing information or criminal activity. I don't think that installing a basketball hoop. So the only option they had on the enforcement side was to continue monitoring to see if anything else came up? Well, Your Honor, actually, yes. They could have taken more steps here. There are other cases in which courts have noted evidence of a witness seeing a computer in the person's home that was to be searched, evidence of agents finding bills indicating Internet activity at that home, evidence of another coworker testifying that this person, hey, takes thumb drives back and forth from his office to his home. All of that is indication that a computer exists inside that home. None of that is here. I'm not saying that they're exact steps that the agent has to say, but there's got to be something more than simply relying on the collector profile that they're relying on. I'd also point out that in Harvey, which is a precedential case from this circuit, the court relied on collector profile but also said that the collector profile plus the two-month recent refreshing activity makes the 13-month-old information not stale. So collector profile by itself doesn't get you all the way. Computer evidence by itself doesn't get you all the way if there's no evidence of the computer in the home. The quality of the prior evidence, the extent of it, has to be a factor. Well, Your Honor, I would say that if you excise the false dates from this case, and do not insert but simply excise the false dates, that there's actually no evidence as to how long or over what period these uploads occurred. There's only evidence of uploads and evidence that one of them could have occurred no later than February 2009. The point is what they found in Collingdale, we were talking about it before, it's not the mother. There's no evidence it's the father, and there's no evidence that it was the sibling, was there? Not that I'm aware of. So he's the suspect. He is the suspect. I believe there was a total of 20 uploads. So this is not one. But I don't know where those, the affidavit does not establish where those uploads occurred from. It doesn't establish that they occurred from the Collingwood house. It just establishes that one of the accounts used to upload them was originally registered at the Collingwood house. It doesn't... The registration is a new issue that you raised in your inquiry, remember? Well, actually the government pointed it out to me. The government corrected the record and said that, hey, actually the upload didn't occur in the Collingdale house. Okay, go ahead. I'm sorry. And I know that the court before had asked about mobile device. I would like to point out that the only mobile device referenced in this affidavit was when they tried to find the IP information for the Hotmail accounts, and it came back to a device that was in no way associated with Mr. Epps. That's in paragraph 22 of the affidavit. So I would say that the fact that there are IP addresses affirmatively going to different locations that are not associated with Mr. Epps, it all adds to, once again, under the totality of the circumstances, a lack of probable cause in this case, both because of the time gap and because of the change in location. Are there any further questions for me? No questions. Thank you very much. Both counsel, very well-presented arguments. It's really a series of well-presented arguments today. It's a pleasure to have you. Such good counsel. Thank you.